## PURDUM et al. v. DURRANCE et al.

(District Court, S. D. Florida. October 9, 1925.)

### No. 174.

**1. Injunction ⟾173—On motion to vacate injunctional order and discharge receiver, sworn answers, on waiver of answer under oath by bill, will be considered as affidavits.**

On motion to vacate injunctional order and discharge receiver, sworn answers, in view of answer under oath having been waived by bill, will be considered as affidavits.

**2. Injunction ⟾173—Answer not sworn to held not to be considered as affidavit, but to amount to pleading only.**

On motion to vacate injunctional order and discharge receiver, answer not sworn to, answer under oath being waived by bill, will not be considered as affidavit, but amounts to pleading only.

**3. Injunction ⟾163(1)—Injunction restraining carrying out contract to pay real estate agents secret profit retained until final disposition of case.**

In suit by owners of land against real estate agents and purchasers to recover secret profit made by agents, motion to dissolve injunctional order, restraining carrying out of contract by which secret profit would be paid agents, in view of fact that, if contentions of all defendants except one agent were true, continuing such order until final disposition of case could not harm them, will be denied.

**4. Receivers ⟾60—Motion to discharge receiver of securities under alleged contract granted on showing that such contract was void.**

In action by landowners against real estate agents and purchasers to recover alleged secret profit to be paid agents, motion to discharge receiver of securities under alleged contract to pay secret profits will be granted, in view of facts that, if such contract was unenforceable as fraudulent, there was nothing for receiver to take into possession, and that certain purchasers defaulted, which, under terms of such contract, rendered it void.

**5. Courts ⟾347—Supplemental bill held not to require dismissal for departure in pleading.**

In suit by landowners to recover alleged secret profits of real estate agents, although notice to adverse party was not given and permission of court was not obtained, as required by new equity rule 34, which superseded old rule 57, to file supplemental bill alleging that, since filing original bill, complainant had found out certain defendants had pretended to change form of transaction, and were pretending that new purchaser had bought without notice of such contract, and that such new purchaser had purchased lands in conjunction with other defendants, and asking that such purchaser be required to reconvey to complainant, or, if such lands had been sold to bona fide purchaser, that complainant be substituted in place of defendants as to profits received in such sale, although seeking relief different from that of original bill, such supplemental bill was permissible under rule 25, prescribing that special relief may be stated in alternative forms, and did not constitute departure in pleading, warranting its dismissal on motion.

**6. Courts ⟾347—Office of "supplemental bill" formerly was to supply irregularity or defect discovered in frame of original bill, or defect arising after commencement of suit.**

Prior to passing of new equity rule 34, which superseded old rule 57, and was intended to obliterate difference in practice of amendment and supplemental procedure, office of "supplemental bill" was to supply some irregularity or defect discovered in frame of original bill, or some defect in suit arising after its commencement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Supplemental Bill.]

**7. Equity ⟾269—Matters occurring prior to commencement of suit, and not stated in bill, should be brought in by amendment.**

In equity, matters occurring prior to commencement of suit, and not stated in bill, should be brought in by amendment.

In Equity. Suit by Bradley K. Purdum and another against C. P. Durrance and oth-

ers for a restraining order, for appointment of receiver, and other relief. On motion by defendants Durrance and others to vacate an injunctional order and to discharge a receiver, and on motion by defendants Rosenberg and others to strike complainants' supplemental bill. Motion to discharge receiver granted, and motion to dismiss supplemental bill denied.

McKay, Withers & Ramsey, of Tampa, Fla., for complainants.

Treadwell & Treadwell, of Arcadia, Fla., for defendant Rainey.

Durrance & Lemire, of Orlando, Fla., and H. S. Phillips, of Tampa, Fla., for other defendants.

CALL, District Judge. Bradley K. Purdum and Harris D. Miller, citizens of Maryland, brought this suit against C. P. Durrance, Homer B. Rainey, C. F. Hanna, Earl D. Farr, E. V. J. Hopkins, J. W. Yager, D. J. Davis, and Phil Rosenberg, citizens of Florida.

The bill alleges that on June 20, 1925, the complainants entered into contract with E. V. J. Hopkins, J. W. Yager, and D. J. Davis to sell them 13,000 acres of land, more or less, situated in Hardee county, Fla. Prior to said date C. P. Durrance was employed to negotiate a sale of the lands at an agreed commission of 5 per cent., exclusive agency, and the sale to the above-named parties was made through the said Durrance, within the time of such exclusive agency. Durrance had associated with him Homer B. Rainey in negotiating the sale of the lands, and the contract of sale was made through the joint efforts of the two. Durrance, authorized to negotiate the sale at $25 per acre, before submitting the offer of Hopkins, Yager, and Davis, recommended the acceptance of an offer of $18 per acre, which was declined. Being ignorant of the conditions and relying on the good faith of Durrance, he (Durrance) was authorized to make the sale of the lands at $20 per acre; $25,000 was paid on execution of the contract of sale. During the pendency of said negotiations Rainey notified complainants herein that the commission was to be paid jointly to himself and Durrance. The time for making another cash payment expired on July 15th, and there was a default, and the proposed purchasers (Hopkins, Yager, and Davis) represented that they had, subsequent to the default, assigned their interest to Phil Rosenberg, and solicited that Rosenberg be permitted to pay the money and complete the contract in his name. This was consented to, and on August 5th the money was paid, the notes and mortgage given for deferred payments, and title vested in Rosenberg, according to the contract with Hopkins, Yager, and Davis; the commission due the brokers paid to Durrance and Rainey. After the consummation of the sale and the payment of the commission, it was discovered that, contemporaneous with the contract of sale to Hopkins, Yager, and Davis, another contract had been made between Hanna and Farr on one side, and Hopkins, Yager, and Davis on the other, wherein it was provided that Hopkins, Yager, and Davis were to pay $10 an acre more for the lands to Hanna and Farr, the payments to be made over a term of years, secured by a mortgage; the first payment to be made on or before August 20, 1925. This contract was recorded in the county in which the lands lie, but the complainants had no knowledge of it until after the consummation of the sale to Rosenberg. Hanna and Farr were acting for Durrance and Rainey, and they are the real parties in interest and beneficiaries. That Rosenberg assumed, not only the payments of the purchase price of the land to complainants, but also the additional $10 per acre. The bill charges knowledge of the defendants that a secret profit of $10 an acre was to be made by the agents of complainants. The prayers are for a restraining order against Rosenberg paying any moneys or issuing securities to the other defendants; that a receiver be appointed to administer the contracts and cause Rosenberg to pay the moneys as therein provided, and execute and deliver mortgage and notes as therein stipulated for the benefit of complainants; that it may be decreed that the defendants, other than Rosenberg, hold all rights under the contract as trustees for complainants; that Rosenberg hold title to the lands subject to the performance of the contract; and general prayer.

The supplemental bill, filed September 10, 1925, alleges that since filing the original bill, it has come to the knowledge of the complainants that Durrance and Rosenberg, for the purpose of defeating the object of the bill, and for the purpose of securing a fraudulent profit on the sale, have changed, or pretended to change, the form of the transaction, whereby title to the lands was vested in Rosenberg, and, acting jointly with S. E. Durrance, they have conspired to ignore the Hanna and Farr contract, and have consummated the purchase of said lands in the name of Rosenberg, and are pretending that Rosenberg, at the time of consummating said purchase, had no knowledge of the

Hanna and Farr contract, and did not buy the lands subject to said contract, but the contrary is charged as true, and Rosenberg did have notice of the fraudulent contract of Durrance, and said lands were purchased by Rosenberg and Durrance as copartners in conjunction with S. E. Durrance and one other person; that the contribution of cash to consummate the deal was as follows: Rosenberg, ¹⁴/₆₈; S. E. Durrance, ⁹/₆₈; C. P. Durrance, ⁴³/₆₈; and the unknown party, ⁶/₆₈; that the cash paid complainants was contributed in that proportion. It is then charged that complainants were ignorant that any one other than Rosenberg was interested in the purchase; that S. E. Durrance is the brother of C. P. Durrance, and is an attorney at law, and at the time of the purchase of said lands, was employed by complainants in business matters then pending, and it was his duty to promptly advise them of facts coming to his knowledge relating to their business transactions, and especially to refrain from speculating in properties of complainants. A prayer, in addition to relief prayed in the original bill, that Rosenberg be required to reconvey to complainants the legal title to the lands upon repayment to him of all moneys received on the purchase price and the return to him of the notes and mortgage and cancellation of said mortgage on the record, or, if the said lands have been sold to a bona fide purchaser, that complainants be substituted in the place and stead of said defendants in such sale or sales, and all moneys received on such sale, over and above the amounts contributed by the defendants, may be adjudged to the complainants.

Upon the hearing on August 27, 1925, an order was entered by one of the judges of this court, enjoining the defendants as prayed in the original bill, and appointing a receiver of securities, etc., under the Hanna-Farr contract. On September 14th motion was made by defendants Durrance, Rosenberg, Hopkins, Yager, and Davis to vacate the injunctional order and discharge the receiver. On September 21, 1925, a motion was made by Rosenberg, Hopkins, Yager, and Davis to strike the supplemental bill. The two motions were heard together.

[1, 2] At the hearing on August 27th the defendant Rainey filed a sworn answer, in which he alleges that he, on being informed by C. P. Durrance that the lands could be purchased for $20 per acre, informed him that he would undertake the sale of said lands for $30 per acre, and would divide with Durrance the difference of $10 per acre, provided Durrance would divide his commission of 5 per cent. The answer then proceeds to state matters showing his bona fides in the matter. On the motion to vacate the injunctional order and discharge the receiver, defendants Rosenberg, Hopkins, Yager, and Davis filed sworn answers, which, the answer under oath having been waived by the bill, will be considered as affidavits. C. P. Durrance filed an answer, not sworn to, and that amounts to a pleading only.

Affidavits were filed by S. E. Durrance (2), Louis M. Silberstein, Bradley K. Purdum, and Rosenberg. The facts, as I gather them from the pleadings and affidavits, are about as follows:

C. P. Durrance, in the business of a real estate broker, was empowered to sell certain lands belonging to the complainants in Hardee county at a commission of 5 per cent. on the purchase price. Durrance interested Homer B. Rainey, another real estate broker, in procuring a purchaser, and through their efforts a contract of sale was entered into with Hopkins, Yager, and Davis at the price of $20 per acre. A first payment of $25,000 was made on June 20th, and another payment of $25,000, with interest, became due July 15th. This second payment was not made, but about July 31st a conference was had between the attorney in fact of Hopkins, Yager, and Davis and the complainants, and other defendants, whereby it finally resulted that Rosenberg was substituted in the place of Hopkins, Yager, and Davis as the purchaser, and the deferred payments then due were made, and notes and mortgage given for the deferred payments.

On making the contract of sale with Hopkins, Yager, and Davis, a contract was made by Hopkins, Yager, and Davis to pay Hanna & Farr, one of whom was connected with Rainey in the real estate business, the further sum of $10 per acre for the land. The proceeds to be derived from this last contract was to be participated in by the two real estate brokers, and it seems to me that the conclusion is irresistible that the contract of sale to Hopkins, Yager, and Davis was consummated by the brokers with the intent to make this profit of $10 per acre for themselves and associates, while they were acting for the complainants for a commission, without disclosing this fact to their principal. The sworn answers of Hopkins, Yager, and Davis, which on this hearing have the effect of affidavits, state that they were imposed upon by Rainey, who was acting as their agent in the matter. If a fraud was perpetrated by their agent, they cannot be the recipi-

ents of any benefits flowing from said fraud; but it seems to me on the proofs adduced at this hearing that they may be eliminated from further consideration on these motions, their entire interest being under their contract with Rosenberg, if their answers are true, vested in Rosenberg. It further appears from the proofs that, upon the default of Hopkins, Yager, and Davis, a movement was inaugurated by C. P. Durrance to interest other parties to take up the Hopkins contract, and Rosenberg then appears in the matter, it now appears representing himself and the other parties, including C. P. Durrance, furnishing the money to make the payments required before the passing of the deed and notes and mortgage to secure the deferred payments.

[3] Considering the motion to vacate the injunctional order and discharge the receiver first: The injunctional order is directed, in so far as Rosenberg is concerned, to carrying out the Hanna & Farr contract. If the contentions of all the defendants, except Rainey, are true, it cannot harm these defendants for the restraining order to be retained until the final disposition of the case, and I therefore am of opinion that the motion to dissolve the injunction should be denied.

[4] I have reached the conclusion on the motion to discharge the receiver that that motion should be granted. If the Hanna & Farr contract is tainted with fraud and unenforceable, there is nothing for the receiver to take into his possession. In addition, the contract in one of its terms provides that, in the event a default by Hopkins et al. in the contract of sale, the contract is automatically determined and becomes void, and there is no question but that Hopkins et al. did default before Rosenberg appeared upon the scene.

[5] Motion was made to dismiss the supplemental bill of complaint. The first and second grounds are based upon rule 34 of the Equity Rules. This rule unquestionably requires notice to the adverse party and the permission of the court. Neither of these requisites were complied with, but it was the purpose of the Supreme Court in the adoption of these rules to speed the procedure in equity, and I think, if these matters alleged in the supplemental pleading are such as are pertinent to the cause made in the original bill, that this permission and terms, etc., may be granted, and terms prescribed on the motion to strike.

The third ground is that the supplemental pleadings do not contain proper matters to be presented by such supplemental pleading. Rule 34 reads as follows: "Upon application of either party the court or judge may, upon reasonable notice and on such terms as are just, permit him to file and serve a supplemental pleading, alleging material facts, occurring after his former pleading, or of which he was ignorant when it was made," etc. This rule supersedes old rule 57; rule 57, allowing the filing of supplemental bills, where some fact had occurred subsequent to the bringing of suit, which caused a defect in the suit, whereas rule 34 of the new Equity Rules extends this right to facts of which he was ignorant at the time of suit. The supplemental bill is apparently based upon this provision of the rule.

[6, 7] Prior to the passing of rule 34, the office of a supplemental bill was to supply some irregularity or defect discovered in the frame of the original bill, or some defect in the suit arising after its commencement. The practice in equity, as I understand it, is that matters occurring prior to the commencement of the suit and not stated in the bill should be brought into the suit by amendment. As before remarked, the new Equity Rules were adopted to simplify and expedite equity pleading, and, observing the change in the language made by rule 34, I am constrained to conclude that the Supreme Court had the practice in mind when it formulated and passed rule 34, and intended to obliterate the difference in practice of amendment and supplemental procedure. A different relief is sought in the supplemental bill from that sought in the original bill, but this, as I understand the rules, is allowable. Rule 25 prescribes that special relief may be stated in alternative forms. This is no more than what is done in the supplemental bill in this case.

I do not think there is such a departure in pleading as would warrant the dismissal of the supplemental bill. I am therefore of opinion that the motion to dismiss should be denied, and an order entered allowing the filing of the supplemental bill, with sufficient time allowed the defendants to present any defense thereto which they or either of them may have. I have not considered the sufficiency of the allegations of the supplemental bill as a basis for the relief sought therein, as the grounds of the motion do not go to that extent.

It will be ordered as above indicated.