TUCKER et al. v. HITCHCOCK.

No. 370.

District Court, S. D. Florida, Tampa Division.

April 2, 1942.

Shackleford, Farrior & Shannon, Joseph P. Lieb and George T. Shannon, all of Tampa, Fla., for employees.

Charles F. Blake and B. L. Cooper, both of Tampa, Fla., for employer.

WALLER, District Judge.

This is an employees' suit under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. on final hearing after the reception of oral and documentary evidence and after submission of the case on briefs by counsel for the respective parties.

### Findings of Fact.

The defendant has a small sawmill and building supply business, which includes the making of window frames, door and window screens, and the like. All of the business of the defendant is conceded to be local, as distinguished from interstate, with the exception that the defendant manufactures small wooden strips, comparable to laths used in plaster work, which strips are called "car strips", and the major portion of which strips the defendant sells to packer-shippers of vegetables and citrus fruits. He also manufactures a grade of boards classed as No. 3, some of which he likewise sells to packer-shippers of fruits and vegetables to be used as "bulk heading" in freight cars in the shipment of fruits and vegetables. Some of the so-called "car strips" and "bulk heading" is usable and used by the local trade. The car strips are sometimes used as tomato stakes, which are stuck in the ground by farmers to support their tomato plants, and, therefore, do not move in interstate commerce. The No. 3 boards are likewise used locally in cheap construction of various kinds. No. 3 boards are common products of all sawmills and are not manufactured specially by the defendant for use in shipment of fruits and vegetables, but the usual use of the car strips, other than as tomato stakes, is in the shipment of fruits and vegetables in interstate· commerce. A car strip is customarily, in length, approximately the width of the box car and is nailed to the vegetable crates in order to hold same in proper position in the car so as to prevent the sliding and bruising of the fruits and vegetables. The strip is nailed to several crates of fruits and vegetables in line in the car and, therefore, tends to maintain the crates in position. The bulk heading lumber used in the shipment of fruits and vegetables is to fill up space in the car not occupied by crates, so as to hold the crates in steady position longitudinally in the car.

The defendant does not ship or sell any commodities outside the State of Florida; in fact, all of the car strips and bulk heading is sold locally and the major portion is sold to packer-shippers of fruits and vegetables by whom they are used to hold the fruits and vegetables in position in the freight car or truck. Practically all of the shipments of fruits and vegetables are, by the packer-shipper, sold or shipped in interstate commerce.

Plaintiffs concede that all of the other activities of the defendant are in intrastate commerce. The plaintiffs contend that such manufacture and sale of car strips and bulk heads constitute "the production of goods for commerce" within the purview of the Fair Labor Standards Act. The plaintiffs also contend that each of them was engaged at least some of the time in each workweek covered by the complaint in producing, manufacturing, handling, or in other manner working on car strips or bulk heading, or both. It is not contended by the plaintiffs that either of them was engaged exclusively in producing, manufacturing, handling, or working on either car strips or bulk heading lumber. It is not shown in the record what part of the time any employee was engaged at any particular period in working

on the car strips or bulk heading, or interstate as distinguished from intrastate business of defendant. It is conceded that practically ninety per cent of defendant's business is local, or intrastate. The defendant contends, chiefly, that because of the failure of the plaintiffs to prove, with reasonable certainty, the actual number of hours worked on interstate business as distinguished from intrastate business of the defendant the amount, if any, which the plaintiffs might otherwise be entitled to recover cannot be determined with sufficient definiteness to support a money judgment for the plaintiffs, or either of them. The plaintiffs contended that the evidence shows that during each workweek in the period covered by the suit each of the plaintiffs did some work in connection with the car strips or bulk heading.

Unquestionably the defendant was producing or manufacturing the car strips and bulk heading materials with knowledge that a major portion thereof would be sold to packers and shippers of fruits and vegetables in interstate commerce.

I find from the evidence that all the plaintiffs, other than Harry Huron, did, during the periods in which they severally worked for the defendant, in most of the weeks, perform some work on the car strips and bulk heading materials. I am convinced, however, that there were occasional weeks throughout the period covered in which all of the plaintiffs did not work on car strips or bulk heading material, particularly during a period when the mill was being rebuilt and during a period in which large special orders for lumber were being rushed out by the defendant, but I am unable to determine from the testimony exactly how many weeks there were in which various plaintiffs did not do any work on car strips. I conclude that there were some weeks in which this did not occur.

As to Harry Huron, I cannot escape the conviction that his connection with car strips and bulk heading material was so uncertain, disconnected, spasmodic, incidental, and sporadic, that I conclude that he has not made out a case for recovery. At least, the evidence as to his activity is so unsatisfactory and uncertain as to impel me to the conclusion that he is not entitled to a recovery even though it should be found that the defendant is engaged in the production of goods for commerce with-

in the meaning and language of the Fair Labor Standards Act.

I find that 11.5 per cent of the defendant's gross business, in dollars and cents, was derived from the sale of car strips and bulk heading material as compared to the total business of the defendant. Car strips and bulk head materials, in an amount of 11.5 per cent of the gross production of defendant, were sold to packers and shippers and ultimately moved, as an aid or incident to the shipment of fruits and vegetables, in interstate transportation.

The evidence does not purport to fix the number of hours worked by any employee at any time on car strips or bulk heading. It, therefore, is impossible from the evidence to determine the actual number of hours spent on interstate, as distinguished from intrastate, business, assuming that such manufacture and sale of the car strips was a sale of goods "with knowledge that shipment, or delivery or sale thereof in commerce is intended" within the purview of Section 215(a) (1) of the Act.

The defendant also contends that the materials manufactured and sold by him to the packers and shippers was a sale to the ultimate consumer in that the car strips and low grade bulk head lumber were utterly valueless after such use and were burned when the car was unloaded; that these materials were merely an incident to the shipment of fruits and vegetables; that they were not invoiced or sold to the consignee of the fruits and vegetables; that the delivery by the defendant to the packer was local and involved no interstate movement, and that under Section 203(i) these materials "after their delivery into the actual physical possession of the ultimate consumer" were not "goods" embraced in the Act. I find that the materials were by the defendant delivered without interstate movement to the packer or shipper and that, factually, the packer was the ultimate consumer of the materials, and that no interstate movement of the materials was begun until the goods were in the actual physical possession of the ultimate consumer.

In this jungle of perplexities, where is the road out?

### Conclusions of Law.

I conclude that in the matter of the production of the car strips and bulk heads manufactured by the defendant and sold

to the packers and shippers for use in the shipment of fruits and vegetables the defendant was engaged in the production of goods for commerce. See Enterprise Box Company v. Fleming, Administrator, 5 Cir., decided February 26, 1942, 125 F.2d 897, 899, wherein the Court said:

"As we understand it, appellant acknowledges that its products would be articles and subjects of commerce but for the fact that they were used by the purchasers thereof in Florida to encase cigars. The gravamen of its contention is that each box was manufactured for primary use as a container for cigars, and that, upon once being used for that purpose, it could not lawfully be so used again; that its economic value accordingly was destroyed by its use in Florida, preventing its entry into competition with cigar boxes manufactured elsewhere after its introduction into the flow of interstate commerce; and that the character of the boxes as 'goods' ceased prior to, and never became a part of, interstate commerce.

"We do not think that the Act is subject to this limited construction. When the appellant engaged in the manufacture of cigar boxes, which were articles and subjects of commerce, and was aware that its product would ultimately find its way into interstate commerce, it became subject to the provisions of the Act as one engaged in the production of goods for commerce. Section 15 (a) (1) of the Act prohibits the sale of goods, with knowledge that shipment thereof in commerce is intended, unless the seller has complied with Sections 6 and 7 thereof. This appellant sold goods, knowing that shipment thereof in commerce was intended, without compliance with those sections. It is of no consequence that its activities in connection with the product were at an end prior to any shipment of the boxes in interstate commerce.[2] Nor is the interstate character of the operation affected by the lack, if any, of economic value in the boxes after the original purchase and use. The regulatory aspects of the commerce power extend to all subjects within the grant, whether the nature thereof be commercial or otherwise.[3]

"Appellant's theory presents the case as analogous to a manufacturer of ice who sells his product to interstate carriers for refrigeration purposes, though in such case the carrier is more clearly the consumer. Yet, in that case, the manufacturer has been held subject to these provisions of the Act. Fleming v. Atlantic Company, D.C., 40 F.Supp. 654. See also Fleming v. Hitchcock, D.C., 38 F.Supp. 358."

I would be disposed to hold as a matter of law that the packer of the fruits and vegetables was the ultimate consumer of these materials were it not for the language of the Circuit Court of Appeals in the case of Enterprise Box Company v. Fleming, supra, wherein the Court said: "Nor is the interstate character of the operation affected by the lack, if any, of economic value in the boxes after the original purchase and use."

It appears to me that this question has been settled by the above holding.

This Court held in the case of Gerdert v. Certified Poultry & Egg Co., Inc., 38 F. Supp. 964, 969, that: "The Court definitely concludes that the Fair Labor Standards Act does not attempt to regulate local transactions which merely *affect* interstate commerce except in the matter of production of goods for commerce or the sale of goods to be shipped, sold, and delivered in commerce, or intended to be shipped, sold, or delivered in interstate commerce."

▉ I entertained the view that so far as a merchant is concerned he is not within the Act unless he is engaged directly in interstate commerce, or, that is, is engaged in the shipment or sale, directly or indirectly, of goods beyond the boundaries of his state, but I also still entertain the view that the term "production of goods for commerce" is a broader term than "engaged in interstate commerce", and that one may be producing goods for commerce who makes no sales extra-state. Unquestionably Congress has the power to regulate transactions which are purely local when isolated if such transactions adversely affect interstate commerce. It seems to the Court that the term "engaged in the production of goods for commerce" might encompass purely local transactions which are the instrumentalities of or affect or burden interstate commerce.

I, therefore, conclude that the manufac-

[2] Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., Dec. 9, 1941, 124 F.2d 42.

[3] Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. —; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168.

ture and sale of the car strips and bulk head materials by the defendant place the defendant and the plaintiffs within the provisions of the Act in question.

An interesting question arises which was not raised in the argument and which, therefore, I do not now decide, which involves a construction of paragraph (i) of Section 203 in the light of Section 207 (c). We have noted heretofore that the word "goods" "does not include goods after their delivery into the actual physical possession of the ultimate consumer * * *". Paragraph (c) of Section 207 provides that the overtime provision of subsection (a) of section 207 shall not apply: "in the case of an employer engaged in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables, or in the first processing, within the area of production (as defined by the Administrator), of any agricultural or horticultural commodity during seasonal operations, * * * the provisions of subsection (a), during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

The record shows, and the Court knows as a matter of common knowledge, that the packing of citrus fruits and vegetables is a seasonal operation; that the fruits and vegetables are grown in the area of production immediately surrounding Plant City; that the bulk of the materials manufactured by the defendant is sold during these seasonal periods to the packer of fruits and vegetables, who is, in fact, the ultimate consumer of the materials produced and sold by the defendant. The packer who for fourteen weeks of the year is exempt from the overtime provisions of the Act is the shipper in interstate commerce of the materials produced. If the materials are moved in interstate commerce they are moved by one who is exempt from the overtime provision of the Act during the seasonal operation for fourteen weeks of the year. Is it the law that one who produces a commodity and makes a local sale of goods to the ultimate consumer, who for fourteen weeks is exempt from the overtime provision, should be under the overtime provision when he would not be if the ultimate and exempt consumer had not shipped the goods in interstate commerce? Unquestionably Congress had the power to regulate local transactions in goods produced for commerce, but when Congress provided that "goods" should not include goods after their delivery to the actual possession of the ultimate consumer, in one section, and in another section exempted the ultimate consumer from the overtime provision of the Act during seasonal operations, the question naturally arises, Did Congress thereby fail to regulate a local transaction arising out of the production of goods for commerce when it excepted the ultimate consumer—the seasonal packer and shipper in interstate commerce? As above stated, this question was not raised, and I do not decide it. Furthermore, I do not know the answer.

The next question necessary to decide is whether or not the plaintiffs have proven, with any degree of certainty, any definite amount for which a judgment could be entered. The answer to this question must be considered from two angles. Firstly: I do not find that the plaintiffs were each engaged, every week in the periods covered by the complaint, in working on car strips and bulk heading. I believe from the evidence that there were certain weeks that nothing was done in reference to car strips and bulk heading. I am unable to say with definiteness how many weeks this occurred.

Secondly: The answer to this question requires a consideration of whether the workweek or the hour is the unit of time for the admeasurement of the minimum wage and the overtime provisions of the Act.

I am not unmindful of the interpretation given the workweek by the Administrator. This interpretation is entitled to serious consideration, but at most it is merely persuasive. See Fleming v. A. H. Belo Corporation, 5 Cir., 121 F.2d 207, 212. The Court is unable to adopt the view that if the employee is engaged at all in any week in interstate activities, within the provisions of the Act, such employee would be entitled to the wages and overtime provided by the Act for the entire week. I reach this conclusion first by the language of the Act itself.

Section 206 of the Act provides for the minimum wage (1) during the first year of "not less than 25 cents an *hour*"; (2) during the next six years "not less than 30 cents an *hour*"; (3) after the expiration of seven years "not less than 40 cents an *hour*". In paragraphs (4) and (5) of said

section, wages per *hour* are again referred to.

In Section 207 (a) (1) we find the "workweek" defined for respective periods by the number of *hours*. In Section 208 (a) we find the language "the objective of a universal minimum wage of 40 cents an *hour* in each industry engaged in commerce or in the production of goods for commerce,". It seems clear from a reading of the Act, that the unit of time and wages was definitely stated to be the *hour*. "Workweek" is mentioned only as it is limited or defined by the hours. All references to wages are based upon an hourly rate. I conclude, therefore, that the workweek cannot be the unit of measurement to determine the amount of time an employee is engaged in interstate commerce or the rate of pay that he should receive for such time engaged in interstate commerce. It is unreasonable to conclude that Congress intended that a person might be engaged in interstate activities for fifteen minutes each week for fifty-two weeks and be entitled to the same pay as one who was engaged continuously in interstate commerce where inter-state wage rate is greater than an intra-state wage rate. The word "engaged" carries with it some idea of continuity or regularity.

However, this Court does not have the privilege of speculation on this question because the Circuit Court of Appeals for the Fifth Circuit has heretofore said, in the case of Super-Cold Southwest Co. v. McBride, 124 F.2d 90, 92: "An employee working both inter-state and intra-state must point out what part of his work was in intra- and what part in inter-state commerce. Klotz v. Ippolito, D.C., 40 F.Supp. 422; Fleming v. Arsenal Building Corporation, D.C., 38 F.Supp. 207; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202. * * * For the failure of the proof in these respects, the judgment is reversed and the cause is remanded with directions to ascertain and allow plaintiff for, the amount of *actual* overtime he worked in interstate commerce including therein all time worked in such commerce whether on Sunday or any other day and excluding therefrom all time claimed when the claim is merely for being 'on call' without more." (Emphasis added.)

In the specially concurring opinion of Judge Hutcheson in the case of White Motor Company v. Marion C. Littleton, 5 Cir., 124 F.2d 92, 94, that learned jurist said: "In addition to the reason given in the opinion for reversing the judgment of the trial court, I think it clear that it must be reversed, because of the complete failure of the proof to show how much of the work done by plaintiff was in interstate and how much in intrastate commerce. There was some testimony that some of the plaintiffs did some work in 'commerce'. But it is clear that by far the greater part of the work done by them was not. An employee doing work both in inter- and in intra-state commerce must point out, with sufficient definiteness to rest a finding on what part of his work was in interstate, and what part in intrastate commerce. Super-Cold Southwest v. McBride, 5 Cir., 124 F.2d 90. This the proof wholly failed to do."

In Jax Beer Company v. Redfern, 5 Cir., 124 F.2d 172, 175, the Court declined to approve the entry of a judgment in favor of the plaintiffs because of insufficient facts as to the time worked in interstate commerce. The Court said: "Aside, however, from the nature of the work performed by Redfern and Wadsworth, the evidence is not sufficient to support the verdict and judgment. Neither plaintiff was able to testify as to the number *of hours worked each day,* but each testified that 'on an average' they worked from seven o'clock in the morning until nine o'clock at night." (Emphasis added.)

Therefore, the language of the Act and the decisions of the Fifth Circuit Court of Appeals refute the contention of plaintiffs that they are entitled to have the workweek, instead of the hour, used as the basis for determining the amount of compensation that each should receive.

The number of hours worked for the defendant and the pay received is shown in the record, but the number of hours that the plaintiffs worked in interstate, as distinguished from intrastate, commerce, does not appear, unless the workweek can be used as the basis of computation, and even as to the number of weeks worked there is considerable uncertainty in the evidence.

It admittedly is impossible for the plaintiffs, or even the defendant, to prove the number of hours worked by any plaintiff in interstate commerce, or to separate interstate hours from intrastate hours. If this is requisite, it would appear that though the plaintiffs are entitled to additional compensation it must be denied them unless a fairly accurate and reasonable basis can otherwise be supplied. The

plaintiffs did not keep records of the time they worked in interstate commerce—neither did the defendant. The duty is cast upon the defendant by the Act.

■ In view of the above situation, and in view of the fact that a liberal construction of the Act should be accorded wherever possible, and in view of the absence of any other method of arriving at a reasonable basis upon which compensation could be awarded, it would appear that the Court would be justified, under the peculiar facts and circumstances in this case, in basing compensation to the employees upon the ratio the amount the interstate business of the defendant bears to the intrastate business, in dollars and cents. The undisputed testimony is that 11.5 per cent of the business of the defendant is gross receipts arose out of sales of car strips and bulk head materials intended for movement in interstate commerce. It is not unreasonable to assume that 11.5 per cent of the time and overtime of the plaintiffs, other than plaintiff Huron, was devoted to the production of goods for commerce. It seems reasonable to assume that at least 11.5 per cent of the regular time and overtime of the defendant was in the production of goods for commerce. To so hold would be "judging a tree by its fruits", for which there is at least biblical sanction. Only by this Solomonesque method does the Court find any reasonable basis upon which to predicate an award. The Court is convinced that the evidence satisfactorily shows that the plaintiffs, with the exception of Huron, have been engaged at least 11.5 per cent of the time and overtime in interstate commerce.

The Fair Labor Standards Act requires the employer to keep accurate records "of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." Section 211 (c). The defendant failed to comply with the foregoing provision of the Act. In consequence of the failure of this positive duty the employees would be without recourse or remedy unless some reasonable basis can be found for the ascertainment of the funds due. The defendant cannot set up his own neglect by way of defense.

A jury was waived in this case and the Court is, therefore, Judge and jury. A jury is permitted much latitude in fixing the amount of its award in instances where the damages are not susceptible of exact proof. The Court, acting as a juror, has here undertaken to exercise the same privilege.

■ I find, therefore, that the plaintiffs, with the exception of Huron, are entitled to recover as wages 11.5 per cent of the amount severally claimed by each, based upon the statement of hours worked and pay received by each, admitted in evidence, as well as an additional equal amount as liquidated damages, together with attorneys' fees in the sum of $500.

Let an appropriate judgment be prepared and submitted after counsel for both parties have checked and verified the amount which each plaintiff should be awarded under the above findings and conclusions.