## SENECA COAL & COKE CO. v. LOFTON.
### No. 2642.

Circuit Court of Appeals, Tenth Circuit.

May 27, 1943.

Rehearing Denied July 8, 1943.

---

Hunter L. Johnson, of Tulsa, Okl., and Karl H. Mueller, of Ft. Worth, Tex., for appellant.

W. L. Shirey, of Tulsa, Okl. (Ned Warren, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellee sought and obtained a judgment against his former employer for overtime compensation, liquidated damages, and attorney's fee under the provisions of the Fair Labor Standards Act of 1938. 52 Stat. 1060-1069, 29 U.S.C.A. 201-219. The principal questions presented by this appeal are (1) whether an employment contract, which expressly provides a fixed monthly compensation for a given number of work hours, but which does not expressly provide the basic or regular hourly rate at which the employee is employed, or allocate the fixed salary to a statutory work week and overtime work, can be construed to provide a "regular rate" by necessary implication so as to meet the requirements of Section 7 of the Act; and (2) if the employment contract can not be so construed, may the employer be excused from the payment of liquidated damages imposed by Section 16(b), because the parties believed in good faith that the employment was not covered by the Act, but if covered, the employment contract fully met its requirements.

According to the unchallenged factual findings of the court, the appellee, Milo Lofton, had for some time prior to the effective date of the Fair Labor Standards Act (October 24, 1938) been employed by the appellant, Seneca Coal and Coke Company, as a night watchman at a strip coal mine owned by appellant. The employment contract expressly provided for a monthly salary of $150, plus 80¢ for each day worked, for which the employee agreed to work 14 hours per day, 6 days each week, or a total of 84 hours. On May 1, 1940, the parties expressly amended the oral contract by reducing the work day from 14 to 12 hours, otherwise the contract remained unchanged and in full force and effect until the employment was terminated on January

8, 1941. Some time prior to May 1, 1940, the employer, after being advised that the employee's services were "probably subject to the Fair Labor Standards Act", but being doubtful of its application, decided to settle with the employee for any overtime compensation due him under the Act. Accordingly on April 27, 1940, the employer paid the employee the sum of $161.67 as full payment for any overtime compensation due him under the Fair Labor Standards Act, and the employee accepted the same without comment or protest.

Effective May 1, 1940, and until December 15, 1940, the employer adopted the practice of allocating the agreed hours worked to the statutory work week (which was 42 hours until October 24, 1940, and 40 hours thereafter), and to overtime for all time worked each week beyond the statutory maximum regular hours for the particular period. This was accomplished by translating the agreed monthly salary into a regular hourly rate of 45¢ for the statutory work week, and one and one-half times that rate or 67½¢ per hour for the agreed overtime hours, and the employee was paid at such regular and overtime rates for all work by semimonthly checks, with attachments thereto showing the number of hours worked and the amount earned, which was the agreed monthly salary, with minor exceptions occasioned by hours worked in excess of the contract hours of employment. This change was a bookkeeping transaction only. The employee was not advised of the change in the method of computing his salary, it was not discussed with him, and was not the result of any agreement between the parties to change or modify the original employment contract.

Some time after December 15, 1940, the employer, acting under advice of a representative of the Wage and Hour Division of the Fair Labor Standards Act, determined the regular hourly rate at which the employee was employed by first ascertaining the weekly salary, and dividing the same by the contract hours (84 and 72).[1] Having thus arrived at a regular or basic hourly rate, overtime compensation was computed on the basis of the statutory work week which was applicable to the period of his employment after the effective date of the Act. Based upon the application of this formula, the employer paid the employee an additional sum of $816.72 on December 27, 1940, which, together with the sum of $161.67 theretofore paid on April 27, 1940, equalled the sum of $987.39 as overtime compensation from the effective date of the Act.

After the employment contract had been terminated on January 8, 1941, the employee brought this suit to recover additional compensation for overtime work, based upon a theory rejected by the trial court, and which was not developed in the briefs because the employee did not appeal. The trial court found that the delay in the payment of the overtime compensation as thus computed was occasioned by the good faith belief of both parties that the services of the employee were not subject to the Fair Labor Standards Act, but if subject to the Act, the employment contract and the payments made thereunder constituted full compliance; that this good faith belief, both in the inapplicability of the Act and compliance therewith if applicable, were caused by confusion concerning these questions, and the payments for overtime compensation were made by the employer voluntarily at its own suggestion when interpretation by the courts made clear the applicability of the Act to the employment in question. The court further found that the employment contract between the parties was intended to fully compensate the employee for all time worked by him, and that it did not require the employee to work in excess of the agreed hours or days for the agreed salary, and in making the contract, neither party intended to violate the law. But the trial court held that since the employment contract providing for a monthly salary for a specified number of hours worked, omitted to expressly provide a regular hourly rate, or for a division of the agreed salary and the agreed work hours into regular and overtime, and separate compensation for regular and overtime, the Fair Labor Standards Act would not permit such omission to be supplied by implication. The court concluded that the employee had, in accordance with his contract, worked in excess of the statutory maximum number of hours, and was therefore entitled to be compensated therefor at the rate of one and one-half times his regular hourly

---

[1] 12 × $150.00 + 80c per day for 313 days = $2,050.00, yearly salary ÷ 52 weeks = $39.43, weekly salary ÷ 84 contract hours = .4695c, and $39.43 ÷ 72 hours = .5476c.

rate, determinable by dividing his total weekly salary by the total hours worked.

In addition to the amounts paid by the employer to the employee voluntarily in the sum of $978.39, the court found that the employer had erroneously deducted one-half hour lunch periods from the work day, and accordingly determined that the employer was indebted to employee for additional overtime compensation in the sum of $19.89, representing the total one-half hour lunch periods deducted by employer during the period of his employment while the Act was applicable. On this basis, the court found that the employee was entitled to a total of $998.28 overtime compensation, of which he had heretofore been voluntarily paid the sum of $978.39, leaving a balance of $19.89 unpaid, for which the court gave judgment, together with the equal sum of $998.28 as liquidated damages, or the total sum of $1,018.17. The court further found that the sum of $100 was a reasonable attorney's fee and gave judgment therefor.

Our basic problem is to determine whether the agreed salary compensates the employee for all hours worked in excess of the statutory maximum, on a basis of one and one-half times the regular rate at which he was employed. Manifestly it becomes necessary to first ascertain the "regular rate" in order to compute compensation for the hours worked beyond the statutory maximum, and if the regular or basic hourly rate is fixed by agreement of the parties, at not less than the statutory minimum, our problem is simple. It is contended that since the agreed monthly salary was intended to compensate the employee in full for all time worked by him to the extent of the agreed hours, and the employee was not required to work in excess of the agreed hours for the agreed salary, the contract by necessary implication provided compensation for a statutory work week and compensation for the agreed overtime, on a basis of one and one-half times the regular rate. The appellant proposes to first ascertain the regular rate at which the employee was employed by the use of the mathematical formula set forth in the footnote,[2] and having thus arrived at a regular hourly rate, it is shown that the agreed salary is exactly sufficient to compensate the employee for a statutory week at the regular hourly rate, and one and one-half times that rate for all overtime worked. The instant contract expressly provides a fixed salary for a definite number of hours, which includes statutory and overtime hours, but it does not expressly provide a regular or basic hourly rate, neither does it expressly provide what part of the agreed salary is to be allocated to compensation for regular or statutory hours, and what part is to be applied in the payment of overtime compensation. Cf. Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716;[3] Murray v. Noblesville Milling Co., 7 Cir., 131 F.2d 470.

It is now settled beyond dispute that where a "regular rate" is not expressly provided in the employment contract, or where the agreed compensation is not so allocated to a statutory work week and to overtime hours so as to make the regular rate explicit in the contract, the court will not supply the deficiency by implication, but will determine the regular rate by dividing the total weekly compensation by the total hours worked. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682;

---

[2] $Y$ = Hourly rate for statutory straight time
$1\frac{1}{2}Y$ = Hourly rate for statutory overtime
84 = Total weekly hours worked each week first year
44 = Weekly hours statutory straight time
40 = Weekly hours statutory overtime
44 $Y$ = Pay for statutory straight time
$1\frac{1}{2}Y \times 40$ (statutory overtime) = $60Y$ = pay for statutory overtime
44 $Y + 60Y$ = $39.43
104Y = 39.43
$Y$ = .3791 hourly rate 44 hours statutory weekly straight time
$1\frac{1}{2}Y$ = .5686 hourly rate statutory overtime

A similar formula was urged and rejected in Patsy Oil & Gas Co. v. Roberts, 10 Cir., 132 F.2d 826.

[3] In Walling v. Belo Corporation, the court made the significant observation, "It [contract] specifies a basic hourly rate of pay and not less than time and a half that rate for every hour of overtime work beyond the maximum hours fixed by the Act." Page 634 of 316 U.S., page 1228 of 62 S.Ct., 86 L.Ed. 1716.

Patsy Oil & Gas Co. v. Roberts, 10 Cir., 132 F.2d 826; Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42, affirmed 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. ——; Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655; Walling v. Stone, 7 Cir., 131 F.2d 461; St. John v. Brown, D.C., 38 F.Supp. 385.

■ Clearly, compliance with the maximum hours and minimum wage requirements of the Fair Labor Standards Act was not within the contemplation of the parties when this oral contract was consummated. After the Act became effective, the parties believed in good faith that it did not cover the employment, but if covered, the employment contract was in compliance therewith. In any event, this belief was not based upon an expressed agreement concerning a regular or basic hourly rate. Assuredly the mathematical formula by which the appellant proposes to determine the regular or basic hourly rate for the purpose of computing overtime compensation is fictional insofar as the employment contract is concerned. It is not expressed in the contract, nor can it be implied by its terms. We conclude that the court correctly computed the overtime compensation under the employment contract.

This brings us to the alternative question whether the employer can be excused from payment of liquidated damages imposed by Section 16(b). As we have seen, the employment contract was consummated and for the most part executed amidst doubt and confusion concerning (1) the constitutionality of the Act (2) its applicability to the particular employment, and (3) what constituted compliance with its requirements. Concededly, the employer acted in the good faith belief that the employment was not covered by the Act, or that the employment contract fully complied with its requirements, and when it became reasonably apparent that the employment did come within the Act, the correct amount of overtime compensation was determined in accordance with the prescribed formula, and voluntarily paid without legal compulsion and before suit was filed.

■■ If any amount of good faith will excuse the payment of liquidated damages imposed by Section 16(b), it would seem wholly justified by the unchallenged factual findings of the trial court, but here the overtime compensation was not paid when due in the regular course of employment, because the parties did not believe it was owing. The violation was committed in good faith based upon a mistake of law. It was nevertheless a valid obligation, created by the applicable law, and failure to discharge it in accordance therewith constituted a violation of Sections 6 and 7 of the Act. Liquidated damages granted by Section 16(b) for violations of Sections 6 and 7 of the Act are mandatory, and not discretionary with the courts. It follows that courts are not authorized to exercise judicial discretion based upon good faith violations. Missel v. Overnight Motor Transportation Co., 4 Cir., 126 F.2d 98, 110, affirmed 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Calaf v. Gonzalez, 1 Cir., 127 F.2d 934; Magann v. Long's Baggage Trans. Co., D.C., 39 F.Supp. 742.

Finally, appellant invokes the rule of stare decisis upon the theory that vested rights under the employment contract accrued under the settled law as announced in Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, which denied the power of the Federal Government to establish minimum wages and maximum hours for the particular type of employment involved here, and the parties relied upon the faith and credit of this state of the law when the contract was made and performed, hence the appellant cannot be divested of this right by the subsequent change in the underlying constitutional principles upon which the contract is based.

■ Whatever may be the limits of the doctrine of stare decisis, or the rule which protects vested rights acquired upon the faith of a rule of decision, see Jackson v. Harris, 10 Cir., 43 F.2d 515, 516, the application of this rule cannot aid the appellant. The Carter Coal case decided the constitutionality of the Bituminous Coal Conservation Act of 1935, 49 Stat. 991, but it did not decide the constitutionality of the Fair Labor Standards Act, which had not been enacted at that time. In passing on this question, the court doubtless used language which encouraged the appellant to conclude that it was not within the constitutional power of the Federal Government to regulate its labor relations. However appellant was not warranted in concluding that the Fair Labor Standards Act was unconstitutional or inapplicable to the employment involved, merely because the Supreme Court had nullified a wholly different Congressional enactment relating to somewhat the same subject matter, and having common purposes. We hold that the employer

violated the provisions of Sections 6 and 7 of the Fair Labor Standards Act, and it is therefore liable for liquidated damages as computed and awarded by the trial court.

The judgment is affirmed.