## ATLANTIC CO. v. BROUGHTON et al., and three other cases.

### Nos. 11076, 11077.

Circuit Court of Appeals, Fifth Circuit.

Dec. 4, 1944.

Rehearing Denied Jan. 5, 1945.

W. K. Meadow and Robert B. Troutman, both of Atlanta, Ga., for Atlantic Co.

Homer C. Denton and Richard E. Cotton, both of Atlanta, Ga., for A. Broughton and Emanuel Carthan et al.

Douglas B. Maggs, Solicitor, U. S. Dept. of Labor, and Bessie Margolin, Asst. Solicitor, U. S. Dept. of Labor, both of Washington, D. C., for amicus curiae.

Before HOLMES, WALLER, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

These appeals are from separate judgments in favor of employees of appellant in suits brought by them to recover minimum wages and overtime compensation, with liquidated damages and attorney's fees, alleged to be due and owing under the Fair Labor Standards Act.[1]

Upon direct appeal in each case, the issue is whether or not a contract of accord and satisfaction relating to the indebtedness was legally effective to extinguish the alleged cause of action. The appellees in each case (by cross-appeal) assert that they were entitled to statutory liquidated damges, not only upon the total of the wages and overtime compensation remaining due after crediting the sums paid pursuant to the settlements, but also upon the amounts received thereunder.

The evidence as to whether a bona fide dispute existed between the parties, upon the question of what wages remained due and unpaid to each employee with whom the settlements were made, and as to whether such settlements were accepted in final and complete adjustment of that dispute, was conflicting. These issues of fact were submitted to the jury, but the jury was unable to agree upon a verdict, and was discharged. The judgments appealed

[1] 29 U.S.C.A. § 201 et seq.

from were entered upon a renewed motion for a directed verdict under Rule 50 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Therefore, these questions of fact remain unanswered in the record before us.

■ This is immaterial in so far as our decision upon the direct appeals is concerned; for we think that, whether or not there was a settlement in good faith of a bona fide dispute, each employee thereafter was entitled to be paid whatever difference then remained between the total of the wages paid and the total due him under the Act, plus liquidated damages thereon and attorney's fees.

■ It is undisputed that an ascertained balance remained due as wages to each appellee after crediting the amounts paid pursuant to the settlements. In the Fair Labor Standards Act, Congress intended "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights." [2] Sections 6 and 7 of the Act effectuate that policy by providing in mandatory language that every employer shall pay the wages prescribed, and Sections 15 and 16 provide criminal punishment for any failure to comply therewith.[3] Though settlements in accord and satisfaction are favored in law, they may not be sanctioned and enforced when they contravene and tend to nullify the letter and spirit of an Act of Congress.[4]

■■ The narrow issue raised by the cross-appeals involves that part of Section 16(b) of the Act which provides that any employer who violates the provisions of Section 6 or 7 of the Act shall be liable to the employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.[5] Under this section, if an employer on any regular pay-

ment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation upon the employer to pay the employee the difference between the wages paid and the wages due, plus an equal additional amount as liquidated damages; and the payment thereafter of the balance due as wages, even though made prior to suit, does not release the accrued liability for liquidated damages.[6] Such damages are not inflicted as a penalty, but are allowed as compensation for detention of a workman's pay.[7]

■■ This issue, due to important differences between the nature of the obligation to pay wages and of the obligation to pay liquidated damages, is controlled by principles other than those decisive of the issue on direct appeal. Failure to comply with the former obligation is a criminal offense, but the Act places upon the employer only a civil liability to pay liquidated damages, and the failure to pay such damages is not a crime or misdemeanor. Though created by statute, the liability to pay liquidated damages is no different from any other ordinary obligation to pay a sum of money. It is in the nature of a Congressional estimate of the damages resulting to an employee from a wrongful withholding of any part of his wages or overtime compensation. As such, it is a proper subject of accord and satisfaction.

■ If, as cross-appellees contend, the payments in settlement were made under such circumstances as would create an agreement of accord and satisfaction, the claim for liquidated damages upon the amounts given in settlement was extinguished. If not, such claims continue to be valid obligations enforceable in this proceeding. Since the disputed question of fact upon which this issue turns was not decided in the court below, the cause must be remanded with instructions that these questions be submitted to a jury for determination.

On direct appeal, the judgment in each case is affirmed; on cross-appeal, the judgment in each case is reversed and the cause

---

[2] Tennessee Coal Co. v. Muscoda Local, 321 U.S. 590, 602, 64 S.Ct. 698, 705.

[3] 29 U.S.C.A. §§ 206, 207, 215, 216.

[4] Guess v. Montague, 4 Cir., 140 F.2d 500.

[5] 29 U.S.C.A. § 216(b).

[6] Seneca Coal & Coke Co. v. Lofton, 10 Cir., 136 F.2d 359; Guess v. Montague, 4 Cir., 140 F.2d 500.

[7] Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682.

is remanded to the District Court for further proceedings not inconsistent with this opinion.

WALLER, Circuit Judge (dissenting).

It is against the intent and command of the Fair Labor Standards Act for a covered employer to pay less than the minimum wages provided by the Act. Secs. 206 and 216, 29 U.S.C.A. It is also contrary to the law's policy for the employer to work such an employee longer than the prescribed hours without paying time and one-half for all overtime. Secs. 207 and 216, 29 U.S.C.A. The Act is definitely a part of the public policy of the land as relates to the duties of the employer to an employee engaged in interstate commerce. No contract to hire and pay eligible employees less than the minimum wage prescribed by the Act would be binding, but we are not here considering the legal effect of a contract of employment to operate in the future,[1] or to avoid the statute, but we are considering the legal effect of a contract for the settlement of a dispute as to hours worked and wages due, and whether the Act, by implication, takes away from an employee the right to settle, in good faith, a bona fide controversy with his employer as to the amount of compensation, if any, which may have become due to such employee from such employer. There seems to be a difference between the making of a contract for future dealings contrary to the statute, and the settlement of an actual and bona fide controversy over transactions that have already occurred.[2] For instance, one cannot make a lawful contract to commit an assault, but one can make an enforceable contract to settle the damages caused by his unlawful assault, and such latter contract is not illegal, but on the contrary has the law's favor. 11 Amer.Jur. p. 256, par. 9.

From ancient times the law has encouraged,[3] and the Holy Writ has urged,[4] the amicable settlement of controversies. The right, or duty, amicably to adjust differences is grounded in good morals and common honesty.

[1] Contracts to operate in the future were under consideration in: Overnight Motor Transportation Company v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L. Ed. 1682; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115; Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537; Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622; United States v. Morley Construction Company, 2 Cir., 98 F.2d 781. These cases were cited in an opinion in Guess v. Montague, 4 Cir., 140 F.2d 500, 504, to support the statement that "no agreement on the part of employees to accept less than the minimum wage required by the statute is binding upon them", but all of the cases cited refer to agreements made before the wages were earned rather than settlements for wages due.

[2] "It may be conceded that a contract entered into between a railroad company and one of its employés, by the terms of which it is contracted that the company shall not be liable for damages because of an injury which may be thereafter suffered by the employé on account of the negligence of the company, is void as against public policy, as well as contravening the provisions of the Constitution, supra; but to deny to a railroad company and one of its employés the power to agree upon a binding settlement of the amount of the damages to which the employé is entitled for an injury suffered by him on account of the negligent act of the company, and to deny to the company the right to pay the employé the damages which the latter is willing to receive in settlement of his claim, and to the employé the power and right to contract for such settlement and to receive payment, would compel all such adjustments to be made at the end of litigation and by the judgment of a court, which is contrary to the public policy of this and every other state. It is evident that it is the liability for a future injury which the railroad company is prohibited from contracting against, and not a liability for an injury from negligence which has already occurred. Several states have constitutional provisions and statutes with provisions similar to section 196, supra, and in no one of them has the provision been so construed as to prevent an accord and satisfaction between the carrier and one of its employés for the claim of the employé for an injury which has already been suffered." Pittsburgh, C., C. & St. L. R. Co. v. Carmody, 188 Ky. 588, 222 S.W. 1070, 1072, 12 A.L.R. 469, text 472, 473.

[3] Williams v. First National Bank of Pauls Valley, 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625; Hennessy v. Bacon, 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605; 11 Amer.Jur. 249.

[4] Matt. 5:40; I Cor. 6:7.

484

The Act should be considered in its public as well as its individual, or private, aspects or relationships. Unquestionably it announces the public policy of the United States toward the employer in the matter of wages and hours of employees engaged in interstate commerce, but it also confers personal rights and privileges upon the individual employee.

The Act commits enforcement of the rights of the general public to the Administrator and to the criminal courts, while the enforcement of the personal, or individual, rights of the employee to receive the prescribed wage is committed to the employee. A right of action is created and he is afforded the option, or privilege, of bringing suit in the courts. The language of the statute is that action to recover the liability may be maintained by an employee. He is encouraged to sue by the inducement of the allowance of attorney's fee and liquidated damages, but he is not required to sue. He may refuse to sue his employer for any, or no, reason and the law cannot compel him to do so. If he sues, he, and not the Government, has full control of the lawsuit. The basis for the amount of the wages and hours claimed by him lies wholly within the realm of his conscience as influenced by his records or recollection. He chooses his own lawyer and his lawyer usually chooses his own ad damnum. The employee is not made an enforcer of the Act. He is neither required, nor expected, to be a crusader for its enforcement. That responsibility is committed to the Administrator and the Department of Justice on whom Congress has placed the duty to protect the Act from those who would evade or disregard it. It is neither expressed nor implied in the Act that the employee must sue or that he cannot settle a bona fide controversy for fewer hours than he has worked in interstate commerce or for less money than he actually believes that he should have under the law in the event that he does sue, for his acts neither affect nor offend the public policy.

The criminal provisions of the Act are unilateral in that they apply only to the employer and not to the employee. As to an employee, no contract of his would be violative of the criminal provisions of the Act because those provisions do not apply to him, and therefore the employer and employee would not be in pari delicto.[5] The Act expressly provides the remedies of prosecution and injunction as the consequences of an infraction of the Act by the employer, and, in the absence of an express and contrary declaration in the Act, it is a reasonable implication that the Legislature meant for only the statutory remedies to be applied. See: Harris v. Runnels, 12 How. 79, 13 L.Ed. 901.

In omitting any express provision in the Act outlawing contracts of compromise and settlement, Congress probably recognized the difficulty, yea, the inability, of hundreds of thousands of employees to make definite and satisfactory proof as to the hours worked in interstate, as distinguished from intrastate, commerce. Congress, perhaps, recognized the rule that the burden of proof is on the plaintiff, and that suits of many employees would fail because of lack of proof due to the failure of either the employee or the employer to keep a record of the hours worked.[6] Numbers of such cases and instances came to the writer's attention during his service as District Judge. Witness, for instance, his struggles as a trial Judge in the case of Tucker v. Hitchcock, D.C., 44 F.Supp. 874, text pages 879, 880, to find a basis upon which employees, who were definitely engaged in interstate commerce a part of the time, might receive at least some of the compensation which the Act specified. The writer is also under the impression that there were then numerous consent decrees procured by the Administrator against employers where, in actuality, the agreements as to the amount of back wages to be paid by the employers were the results of compromises. A number of settlements between the employer and employees of suits involving minimum and overtime wages in cases pending were made and evidenced by consent decrees having the Court's approval. In the light of this background; in the light of the freedom that men have so long enjoyed of making a settlement in good faith of their controversies; and in the light of the advantages that may so often accrue

---

[5] In American National Insurance Company v. Tabor, 111 Tex. 155, 230 S.W. 397, the Supreme Court of Texas said: "It is safe to assume that whenever the statute imposes a penalty upon one party and none upon the other, they are not to be regarded as in pari delicto."

[6] Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172.

to the employee, for whose benefit the Act was passed, I am unwilling in join in judicially writing into the Act an interdiction of bona fide compromises of suits or claims for wages under the Act. Such a construction is not demanded by the Act and I am apprehensive that if such holding is adhered to it will be to the detriment of many employees who, being unable to prove with any reasonable certainty the hours worked in interstate commerce, might, in the absence of such a construction, do as many have done, and make a reasonable compromise, thereby recovering something in a suit that otherwise would fail in toto.

I am unwilling to add, by way of judicial construction, a provision to the Act that takes away from the individual a praiseworthy privilege of such great antiquity that to some it partakes of the nature of a natural right and to others it appears as a moral or religious duty.

The individual rights of the employee are easily separable from the duty of the employer in their relation to the public policy of the Act and its enforcement. A settlement in good faith with the employee for wages illegally withheld from him would not protect the employer from prosecution for violating the Act, nor would it prevent the Administrator from exercising the powers of enforcement conferred upon him by the Act.[7]

It seems clear:

(1) That the contract here was not for future employment in disregard of the Act; (2) that the Act does not expressly prohibit the bona fide settlement of claims or suits for wages under the Act; (3) that the act of an employee in accepting less than the prescribed wage was not made criminal and hence as to him his acceptance was not void as being against public policy; (4) that the employee is given no duty as an enforcer of the Act; (5) that the settlement of controversies is a right of such antiquity and virtue that only Congress could restrict or destroy it; (6) that the Court, in the absence of express commands from Congress, should not by judicial construction strike down its favored and aged consort, viz., the right of compromise; (7) that the employee has the option to sue or not to sue, to settle or not to settle, and having such option is bound by any settlement entered into freely and in good faith and in the absence of fraud or other vitiating fact or incident, for the freedom with which one enters into a contract is an immunizer against any freedom in its disaffirmance.

I especially cannot concur in any construction of the Act which outlaws the amicable settlement of actual controversies relating to the number of hours worked for which wages are claimed, for while the rate of pay is fixed at the bottom by statute, the number of hours in which any employee may have worked during a period in question is wholly a question of fact concerning which frequently arise honest and difficult disputes. Congress has not closed the doors to the settlement of disputed questions of fact and the Courts should not do so by judicial construction.

---

[7] "This does not mean, however, that the compromise of an action or right of action for civil liabilities arising from a criminal act is forbidden; on the contrary, one having a civil remedy for injuries arising from a criminal act may compromise his claim therefor either before or after bringing suit provided his compromise does not involve, expressly or impliedly, an agreement to suppress evidence or to abandon or hinder a criminal prosecution." 11 Amer. Jur. 256.