In re Beth Ratcliffe SMITH and Natalie Dawn Smith, a minor child, By and Through her next friend, parent, and natural guardian Beth Ratcliffe Smith, Petitioners.

No. 91–3064.

United States Court of Appeals, Eleventh Circuit.

Feb. 28, 1991.

Usher L. Brown, Orlando, Fla., for petitioner.

J. Scott Kirk, Orlando, James A. Sawyer, Jr., Orlando, Andrew Thomas, Orlando, G.

Kendall Sharp, Orlando, Fla., for respondent.

Before FAY, KRAVITCH and BIRCH, Circuit Judges.

BY THE COURT:

Petitioners seek a writ of mandamus under 28 U.S.C. § 1651 to enforce a settlement reached in federal district court with the School Board of Orange County and the Florida Department of Health and Rehabilitative Services (HRS) for a special education program and housing for a handicapped child. For the reasons below, the writ is granted.

■ Petitioners are Beth Ratcliffe Smith and her daughter Natalie Dawn Smith, a 15-year-old with bilateral temporal lobe agenesis. Natalie was enrolled in an Orange County School Board special education program in 1988, and in October 1989 she was admitted to the psychiatric wing of Florida Hospital, a short-term acute care facility where she is presently being held. In January 1990, a Florida circuit court determined that Natalie should remain subject to involuntary placement in the hospital under Florida's Baker Act. Petitioners appealed this ruling and also sued the school board and HRS in United States District Court in the Middle District of Florida under procedural due process and the federal Education of the Handicapped Act, 20 U.S.C. §§ 1400, *et seq.* They argued that the two state agencies were not providing the free and appropriate education to which Natalie was entitled. The county agencies and petitioners reached a settlement agreement before trial resolving all issues. It provided for Natalie's release from Florida Hospital and for supervised care, education and residence elsewhere. The agencies agreed to pay $100,000 to a private nonprofit corporation for education and up to $60,000 for housing and support staff. *See* record excerpts Exhibit B. At a hearing before Hon. G. Kendall Sharp to review the agreement, the district judge declined to approve the agreement and ruled from the bench:

All right. Gentlemen, the court is very concerned with where the future is going to bring this type of case. We are going to be inundated within the next couple of years with drug abuse children who are going to be infused into the school system, and if each of those children are going to cost the school system and HRS two hundred thousand dollars per year, the state of Florida is going to go broke within no time. The court cannot approve this agreement. The court finds that it is against public policy, and a cost of two hundred thousand dollars per year per child is not within the intent of either the Handicapped Children Act, the Florida statutes on education or any statutes of HRS. You're going to have to work something out. But the court will not approve this agreement as being against public policy. We'll stand adjourned.

Hearing tr. at 4–5. A state circuit judge two weeks after this ruling reviewed the settlement in the parallel actions under Florida law, as is required by Fla.Stat. § 744.387(3)(a),[1] and approved it. *See* Exhibit D.

■ This is not the case of a judge encouraging resistant parties to settle, but rather the opposite. Here the parties agreed to settle all issues, and the judge declined to approve based on the financial size of the settlement. A trial judge ought not try the case during a settlement hearing and should be hesitant to substitute his or her own judgment for that of counsel. *See Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977) (footnote omitted).[2] "In determining whether to approve a proposed

---

1. "No settlement after an action has been commenced by or on behalf of a minor or other incompetent shall be effective unless approved by the court having jurisdiction of the action." Fla.Stat. § 744.387(3)(a).

2. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Id.; see also Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir.1985); *United States v. City of Miami*, 614 F.2d 1322, 1330 (5th Cir.1980). Settlement is generally favored because it conserves scarce judicial resources. *Cotton*, 559 F.2d at 1331. As a leading treatise describes the judge's role in settling complex cases:

> [T]he judge must guard against the temptation to become an advocate—either in favor of the settlement because of a desire to conclude the litigation, or against the settlement because of the responsibility to protect the rights of those not parties to the settlement. In reviewing the settlement the judge is called upon to be impartial and neutral, favoring neither the proponents of the settlement nor those who are opposed or absent.

*Moore's Federal Practice, Manual for Complex Litigation 2d* § 23.14 at 160 (1986). *See also City of Miami*, 614 F.2d at 1333 ("A refusal to sign a consent decree based on generalized notions of unfairness is unacceptable."). In this case the district judge stated that his refusal to approve the settlement was based on the "unrepresented interests" of Florida taxpayers. *See* Response to the Petition for Writ of Mandamus at 7–8.

■ A judge is not obligated to approve any settlement that is put forth by the parties. Because a settlement is a contract, the agreement itself may be void as against public policy on rare occasions. Settlements are void against public policy, however, only if they directly contravene a state or federal statute or policy. *See Yockey v. Horn*, 880 F.2d 945, 950 (7th Cir.1989); *Jackson Purchase Rural Electric Cooperative Assoc. v. Local Union 816*, 646 F.2d 264, 267 (6th Cir.1981); *City of Miami*, 614 F.2d at 1333; *Murtagh v. University Computing Co.*, 490 F.2d 810, 816 (5th Cir.1974); *Atlantic Co. v. Brough-*

*ton*, 146 F.2d 480, 482 (5th Cir.1944) ("Though settlements in accord and satisfaction are favored in law, they may not be sanctioned and enforced when they contravene and tend to nullify the letter and spirit of an Act of Congress."). A settlement against public policy typically involves endorsement of continuing violations of a statute, such as labor or securities codes, or a waiver of protective rights under such statutes.

The settlement at issue in this case was not against public policy. It violated no statute or policy, state or federal. In fact, the only guidance on the particular subject was Fla.Stat. § 744.387(3)(a), which was enacted to ensure that settlements involving minors protected their interests. Furthermore, Florida law is that *only* the child's interest may be considered and that financial excessiveness is not relevant in deciding whether to approve a settlement. *Bullard v. Sharp*, 407 So.2d 1023, 1024 (Fla. Dist.Ct.App.1981) (Sharp, J., then of the Nineteenth Judicial Circuit, subject to mandamus after refusing to enforce settlement based on its excessive amount); *see also Reed by and through Reed v. United States*, 891 F.2d 878, 881 n. 3 (11th Cir. 1990) (citing *Bullard*).[3] Here, the trial judge conceded that the settlement was in the best interests of Natalie Smith, but nonetheless invoked the general financial health of Florida's state treasury to strike it on public policy grounds. *See* Response to Petition for Mandamus at 6. The trial judge failed to heed our advice that "[w]hen the remedy that is jointly proposed by these parties is within reasonable bounds and is not illegal, unconstitutional, or against public policy, the courts should give it a chance to work." *City of Miami*, 614 F.2d at 1333. In any event, this is not a case in which unrepresented parties were excluded because the defendants were state agencies perfectly capable of evaluating the financial impact of the settlement.

■ The question remains whether the trial court's error should be remedied by mandamus under 28 U.S.C. § 1651 rather

---

**3.** Although this is a federal question case rather than a diversity case, the trial court may consider state law in evaluating whether the settlement is against public policy.

than the usual route of appeal. We have cautioned that mandamus is a drastic remedy reserved for extraordinary situations. *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir.1986). "It is appropriate only 'to remedy a clear usurpation of power or abuse of discretion, ... and when no other adequate means of obtaining relief is available.'" *Id.* (citations omitted). In particular, a writ of mandamus may issue only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Allied Chemical Corp. v. Daiflon*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (citations omitted).

In this case the district court's refusal to approve the settlement left the parties the option of fashioning a new one less desirable or proceeding with litigation against their will. The trial judge simply stated: "You're going to have to work something out" and adjourned the hearing. As in *Bullard*, the parties are effectively "stymied by the refusal of the trial court to approve the settlement." *Bullard*, 407 So.2d at 1024. The trial judge has effectively frozen the litigation and thwarted the possibility of an appealable final order. *See In re Temple*, 851 F.2d 1269, 1271 (11th Cir.1988) (mandamus granted to vacate class certification and stay of litigation); *In re Sharon Steel Corp.*, 918 F.2d 434, 436 (3d Cir.1990) (mandamus granted to order court to rule on motion for reconsideration). The trial judge also has ordered that no funds held in escrow be dispersed in the case until further order of the court. *See* Exhibit E. In some respects, the mandamus requested in this case is similar to directives to district judges to enforce consent decrees despite their efforts to avoid doing so based on federalism or other grounds not within their discretion. *See, e.g., Allen v. Alabama State Bd. of Educ.*, 816 F.2d 575, 577 (11th Cir. 1987). The district court may have had discretion to disapprove the settlement on public policy grounds, but it had no discretion to do so based on financial excessiveness. *See supra.* As in *In re Temple*, the

parties are basically "back to square one." 851 F.2d at 1271. We conclude that this is among the rare cases where there is no alternative but mandamus to remedy the trial court's error.

Accordingly, the petition for writ of mandamus is GRANTED and the district court is DIRECTED to vacate its order disapproving the settlement agreement and approve the settlement in light of the foregoing.