**UNITED STATES of America, Plaintiff,**

v.

**Gary JEROME, Defendant.**

**Nos. CR–N–87–16–ECR and CV–N–95–375–ECR.\***

United States District Court, D. Nevada.

June 12, 1996.

---

\* The parties have included in the captions to their briefs filed in this proceeding on Defendant's petition to vacate a sentence of imprisonment pursuant to 28 U.S.C. § 2255 both the docket number assigned to the original criminal prosecution and the civil docket number assigned to this separate civil action. In both the defendant's and the government's briefs the civil docket number is preceded by the word "axillary." The court assumes that the parties intend thereby to indicate that the instant petition constitutes both an independent civil action and a proceeding ancillary or auxiliary to the underlying criminal action.

991

L. Anthony White, Asst. U.S. Atty., Reno, NV, for Plaintiff.

George J. Cotsirilos, Jr., San Francisco, CA, and Steven Sexton, Reno, NV, for Defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

Presently before the court for decision is Defendant Gary Jerome's petition (Doc. # 639) under 28 U.S.C. § 2255 to vacate his sentence of imprisonment. The parties have filed memoranda of points and authorities in support of and in opposition to the petition, and the government and Defendant Jerome have now jointly submitted for the court's approval a proposed agreement (Doc. # 658A) in settlement of the petition to vacate the sentence and the judgment of conviction against Gary Jerome entered December 8, 1987 (Doc. # 537).

On July 2, 1987 Gary Jerome was convicted of carrying on a continuing criminal enterprise under 21 U.S.C. § 848, conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute under 21 U.S.C. §§ 841, 846, and interstate transportation in aid of racketeering, 18 U.S.C. § 1952. On December 8, 1987, Jerome was sentenced to a term of thirty-five years in the custody of the Attorney General.

More than seven years later, on June 13, 1995, Jerome, through counsel, filed his petition under 28 U.S.C. § 2255 to vacate the judgment of conviction on the grounds that he was denied effective assistance of counsel at trial, in violation of his rights under the Sixth Amendment. The government has agreed with the substance of Jerome's inef-

fective assistance claim, and has joined in a proposed agreement in settlement of that claim, which agreement is now before the court for approval. The parties have stipulated that Jerome's trial counsel provided "incompetent and unreasonable advice" which caused Jerome to reject a pretrial plea offer by the government, thereby depriving Jerome of denied effective assistance of counsel at trial. The proposed settlement agreement would, in effect, require the court to vacate the 1987 judgment of conviction, and to permit Jerome to plead guilty to two of the counts in the original indictment.

A petition to vacate a sentence of imprisonment under 28 U.S.C. § 2255, like a petition for a writ of habeas corpus, is not technically a continuation of the original criminal proceeding, but is itself a free-standing civil action. *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). Nor does a Section 2255 petition implicate the constitutional procedural safeguards required, for example, in the acceptance of a plea of guilty.[1] *United States v. Malik*, 800 F.2d 143, 146 (7th Cir.1986). A proceeding on a petition for vacatur of sentence under Section 2255 is therefore governed by the rules applicable to ordinary civil actions. *United States v. Somers*, 552 F.2d 108 (3d Cir.1977); *Ferrara v. United States*, 547 F.2d 861 (5th Cir.1977).

The oft-repeated preference for settlement of civil disputes therefore bears on the court's decision in this matter; settlement relieves the parties of the continuing burden of litigation and frees scarce judicial resources to attend litigants who cannot otherwise resolve their differences. "A settlement is the parties' business. They may compromise just as they may reach any other (lawful) contract." *In re Memorial Hospital*, 862 F.2d 1299, 1302 (8th Cir.1988). On the other hand, where the bargain the parties seek to strike requires judicial action, economy is no longer necessarily the prime consideration. Where, as here, the parties' proposed agreement will necessitate vacatur of a

sentence of imprisonment imposed following a jury verdict in a criminal case, it "may be inappropriate to approve a settlement that squanders judicial time already invested." The court must consider the judiciary's interest in the consistency and predictability of its own processes, as well as the litigants' interest in the efficient resolution of their dispute. *Id.*

In addition, the court is not obliged to approve any settlement agreement proposed by the parties. A settlement, being a form of contract, may be void as against public policy, and thus ineligible for judicial approbation. Generally speaking, settlement agreements are void as against public policy only if they "directly contravene a state or federal statute or policy." *In re Smith*, 926 F.2d 1027, 1029 (11th Cir.1991) (citing, *inter alia, Yockey v. Horn*, 880 F.2d 945, 950 (7th Cir.1989); *Jackson Purchase Rural Elec. Coop. Ass'n v. Local Union 816*, 646 F.2d 264, 267 (6th Cir.1981); *United States v. City of Miami*, 614 F.2d 1322, 1333 (5th Cir. 1980)). Where, as here, no state statute or policy is concerned, a settlement agreement is void as against federal public policy if it contravenes or tends to nullify the letter and spirit of an Act of Congress. *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944), *cert. denied*, 324 U.S. 883, 65 S.Ct. 1021, 89 L.Ed. 1433 (1945).

The court recognizes its obligation not to try the case during settlement negotiations, and to hesitate before substituting its own judgment for that of counsel. *In re Smith*, 926 F.2d at 1028. Nevertheless, before placing its imprimatur on the proposed settlement agreement, the court must satisfy itself that the agreement is fair, adequate and reasonable, is not the product of collusion between the parties, and does not contravene public policy. *Id.* at 1028–29. To that extent at least, the court cannot avoid some inquiry into the merits of the case.

The Constitution guarantees every person accused of a crime the assistance of

---

1. Of course, in this particular case, where the *remedy* sought is the vacatur of the original judgment of conviction and the entry by petitioner Jerome of a plea of guilty to some of the

charges in the original indictment, the constitutional safeguards respecting guilty pleas will apply in that derivative proceeding.

counsel for her defense. U.S. Const. amend. VI. That right is violated where defense counsel is so incompetent, or renders advice so deficient, as to be outside the range of professionally competent legal assistance, and where, as a result of that incompetent assistance, there exists a reasonable probability of a different result at trial sufficient to undermine confidence in the outcome. *Ortiz–Sandoval v. Gomez,* 81 F.3d 891 (9th Cir.1996) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). To put it another way, a sentence of imprisonment may be vacated on the grounds of ineffective assistance of counsel only where it is shown that counsel committed errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *United States v. Span,* 75 F.3d 1383, 1390 (9th Cir.1996) (quoting *Strickland, id.* at 687, 104 S.Ct. at 2064).

■■■■■ A defendant seeking to vacate her conviction on this basis therefore must show *both* that the level of counsel's performance was so far below what is normally acceptable as to in effect deprive the accused of a defense *and* that but for that deficiency there exists a reasonable likelihood that the trial would have had a different result. Speculation that a different lawyer, or the same lawyer using different strategy or tactics, would have changed the result, is insufficient to demonstrate the requisite "prejudice." *Cooks v. Spalding,* 660 F.2d 738, 740 (9th Cir.1981), *cert. denied,* 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982). In addition, there exists a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Ortiz–Sandoval,* 81 F.3d at 896 (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065–66). On a motion to vacate sentence under 28 U.S.C. § 2255, judicial inspection of the adequacy of the legal assistance provided the petitioner must be highly deferential. *Span,* 75 F.3d at 1387.

The most serious specific allegation in Jerome's claim that his retained counsel at trial, Carter King, rendered legal advice so deficient as to deprive Jerome of effective assistance, is that despite overwhelming incriminatory evidence, King advised Jerome to reject a plea offer and proceed to trial. The parties do not dispute Jerome's claim that on the eve of trial the government offered to dismiss the CCE count of the indictment and to recommend a prison sentence of no more than twenty years' duration, in exchange for Jerome's plea of guilty to the other charges in the indictment.

■■■ Jerome makes this argument despite the fact that on direct appeal his CCE conviction was overturned. *United States v. Jerome,* 942 F.2d 1328 (9th Cir.1991). He maintains that had he accepted the original plea offer with its "cap" of twenty years' incarceration, his total prison sentence would have been much shorter. It is true that a lesser sentence can qualify as a "different result, thus satisfying the "prejudice" aspect" of the *Strickland* rule. *United States v. Blaylock,* 20 F.3d 1458, 1467–68 (9th Cir. 1994).

Jerome argues alternatively that his trial counsel committed a grievous error in deciding to place most if not all of his strategic eggs in the CCE basket. By devoting so much effort towards winning an acquittal on the CCE charge, Jerome says, trial counsel forsook the opportunity to wage a more thorough campaign against the other charges in the indictment, thereby virtually ensuring convictions on those other, lesser charges.

The parties did not prior to trial conclude a final plea agreement. Shortly before commencement of trial, the Assistant United States Attorney assigned to Jerome's case informed defense counsel that the government would consider dismissing the continuing criminal enterprise charge and recommending that Jerome receive a sentence of no more than twenty years' duration on all the remaining charges. Declaration of AUSA L. Anthony White at 1, appended to the Government's Opposition to Petition to Vacate Conviction and Sentence (Doc. # 653).

The court will assume, *arguendo,* that the government's informal pretrial plea offer would have ripened into a binding plea agreement under Fed.R.Crim.P. 11(e)(2) had Jerome agreed to accept it, and will further assume that had Jerome accepted a plea offer in final form the court would likely have

imposed a sentence no greater than the recommended twenty-year "cap." The issues, then, are (1) what advice did trial counsel render Jerome with respect to the putative plea offer, and (2) whether that advice fell outside the range of permissible professional choices a lawyer may offer her client, thereby depriving the client of the constitutional right to effective assistance of counsel as described in *Strickland*.

■ It has been held that an incompetently counseled decision to plead not guilty and to proceed to trial does fall within the range of protection appropriately protected by the Sixth Amendment right to effective assistance of counsel. *Turner v. Tennessee*, 858 F.2d 1201 (6th Cir.1988), *vacated on other grounds*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989). Certainly trial counsel's failure to *communicate* a plea offer to a criminal defendant can constitute "unreasonable conduct under prevailing professional standards," thus falling outside the range of professional choices open to defense counsel in a criminal case, and thereby depriving an accused of her constitutional right to effective assistance of counsel. *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir.1994). But Gary Jerome does not claim that Carter King neglected to inform him of the plea offer. Rather, he claims that King's advice with respect to the plea offer was incompetent. He argues that no competent attorney would, in the face of such overwhelming evidence of Jerome's guilt, have failed to urge acceptance of the offer. Jerome argues, in essence, that he rejected the plea offer on the basis of Carter King's advice that he stood a good chance of being acquitted of the CCE charge the government had offered to dismiss.

■ At least one district court has declared that where the government offers a plea agreement, counsel should fully inform herself on the law, and then advise the accused "with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome." *Turner v. Tennessee*, 664 F.Supp. 1113, 1120 (M.D.Tenn.) (quoting ABA Standards for Criminal Justice 4–5.1(a), 4–6.2 commentary (2d ed. 1980)), *aff'd*, 858 F.2d 1201 (6th Cir.

1987), *vacated on other grounds*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989). Because of the deference the court must show trial counsel with respect to choices between competing tactics and strategies, and because of the strong presumption of effectiveness of counsel, *see Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2065–66, advice by counsel to reject a plea offer will constitute ineffective assistance only where the advice was "so patently unreasonable that no competent attorney would have" so advised her client. *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir.1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 *see also Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

■ Jerome declares in support of his Section 2255 petition that he followed Carter King's advice to reject the government's eleventh-hour plea offer on the strength of King's opinion that the CCE charge was "ridiculous" and that Jerome stood a good chance of acquittal on the remaining charges. Jerome Declaration at 3. The fact that a unanimous panel of judges of the Ninth Circuit Court of Appeals threw out the CCE conviction would seem to indicate that King's judgment was most likely not so far from reality as to fall below the level of constitutional adequacy: If, in the judgment of that appellate court, the evidence was insufficient to convict Jerome on the CCE charge, Carter King's prediction that Jerome could win an acquittal on that charge cannot be said to have been so foolish as to have deprived Jerome of effective assistance of counsel.

Even so, Jerome argues, had he accepted the plea offer with the proposed twenty-year "cap" on the term of imprisonment, the outcome, in terms of the length of time he would have to spend in prison, would have been different. *See United States v. Blaylock*, 20 F.3d 1458, 1467–68 (9th Cir.1994). The court assumes for the sake of this argument that the plea offer would eventually have matured into a agreement between Jerome and the government which could have bound the court under Fed.R.Crim.P. 11(e)(2). The CCE charge would have been dismissed, and

Jerome would have been sentenced to twenty years in prison, with the possibility of parole in as few as seven years. Jerome argues that this possibility, when considered in conjunction with the facts (1) that King predicted Jerome would fare no worse at trial than under the proposed plea offer and (2) that Jerome eventually received a sentence of thirty-five years in prison, constitute proof of ineffective assistance.

The law, however, is to the contrary. Given the nature of the offenses charged—multiple drug trafficking offenses over many years—a reasonably competent lawyer could not be expected to predict accurately the maximum sentence the court would impose. *United States v. Kidd*, 734 F.2d 409, 414 (9th Cir.1984). That Carter King's prediction turned out to be wrong is not in and of itself grounds to vacate the sentence imposed as a violation of Jerome's right to effective assistance. *Id.* Nor does the difference between the sentence Carter King predicted and what Jerome actually received constitute the kind of "gross mischaracterization of the likely outcome" which forms an exception to the principle of *Kidd. See United States v. Michlin*, 34 F.3d 896, 899 (9th Cir.1994).

In fact, there is simply no evidence that Carter King even recommended that Jerome reject the plea offer. Jerome's own declaration says only that King **did not recommend he accept** the offer. Jerome Declaration at 4. Carter King himself says only that he "did not recommend to Mr. Jerome that he accept or reject the government's plea offer and told [Jerome] that the decision was up to him." King Declaration at 3. The court is aware of no authority for the proposition that the **failure to recommend** acceptance of an inchoate plea offer can constitute ineffective assistance of counsel.

The court has, as noted above, assumed that the government's informal pretrial plea offer would have ripened into a binding Fed. R.Crim.P. 11(e)(2) agreement. However, even further assuming (a) that Carter King's analysis of the law and the facts was vastly incompetent, and (b) that King's predictions regarding the likely outcome of a trial were grossly irresponsible, Jerome must still prove that but for King's advice he **would** have accepted the plea offer. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

Jerome does claim, now, nearly ten years after the fact, that had King's advice been better, he would have accepted the plea offer. Jerome Declaration at 4. Such self-serving statements, made after years' delay, are inadequate to demonstrate the prejudice required in an ineffective assistance claim. To prevail on his ineffective assistance claim, Jerome must provide credible and non-conclusory evidence that he would have pled guilty had he received proper legal advice. *Engelen, id.* Jerome provides no evidence—other than his declaration prepared solely for the purposes of this Section 2255 action—that **prior to his conviction** he expressed any desire to plead guilty. *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir.1991). Jerome therefore cannot establish the requisite reasonable probability that but for counsel's alleged ineffective assistance, he would have accepted the offer to plead. *Id.*

Jerome argues that Carter King's advice regarding the plea offer was constitutionally inadequate in that King did not advise him of the fact that, under the law in effect at the time of trial, Jerome might become eligible for parole if he pled guilty, but that there would be no possibility of parole should he proceed to trial. Jerome Declaration at 4.[2]

---

**2.** In fact, Jerome at most *implies* that Carter King failed to advise him of the parole consequences of accepting or rejecting the plea offer. Nowhere in his Declaration does Jerome actually assert that King neglected in their conference regarding the pretrial plea offer to discuss parole. The only reference to parole in Jerome's Declaration consists of carefully chosen allegations, phrased in the conditional mood:

> Had Mr. King informed me that the no more than 20 year sentence under the plea agreement was subject to parole while any sentence

imposed under the CCE count was not and had Mr. King not told me that I would probably get 20 years pursuant to the proposed plea agreement, I would have pled guilty and accepted the proposed plea agreement.

Jerome Declaration at 4:12–18, appended as Ex. B to Petition to Vacate Sentence (Doc. # 639). Nevertheless, for the sake of argument, the court construes this language as alleging King's failure to advise Jerome of the parole consequences of the courses of action available to him.

996

Carter King's own declaration, however, indicates that although he and his client may not have discussed the parole ramifications of a CCE conviction versus the chance of parole under a negotiated guilty plea at the time of the government's plea offer, that he had at some point during trial preparation advised Jerome that a CCE conviction following trial would result in a minimum of ten years in prison without the possibility of parole. King Declaration at 3.

■ Even assuming that King never advised Jerome of the different parole consequences of a negotiated plea and of conviction at trial, such a mistake by counsel regarding appraisal of the parole consequences of rejecting a plea offer "is not the type of error that takes the representation outside the wide range of professionally competent assistance that *Strickland* would condemn." *Johnson v. Cabana*, 818 F.2d 333, 342 (5th Cir.), *cert. denied*, 481 U.S. 1061, 107 S.Ct. 2207, 95 L.Ed.2d 861 (1987). Moreover, the CCE violation was the only offense charged in the indictment for which parole would be unavailable,[3] and, as noted above, that conviction was overturned on appeal, with the result that the remaining convictions would all be subject to parole.

■ Jerome also argues that Carter King's trial tactics deprived him of effective assistance of counsel. At trial King defended Jerome on several different theories. He attempted to prove that Jerome was entrapped by the government into participating in the sale of a large quantity of cocaine. He attempted to prove that Jerome's chronic use of alcohol and other drugs rendered him legally insane. He attempted to prove that Jerome was merely a small-time drug dealer, and therefore not guilty of maintaining a continuing criminal enterprise.

Jerome argues that these defense theories were logically inconsistent with each other. He argues that the presentation of evidence that Jerome was for most of his life a person of good character undermined the insanity defense, and he argues that the concession that Jerome was a small-time drug dealer undermined the entrapment defense, since that concession precluded proof that Jerome was not predisposed to sell narcotics.

■ The choice of defense theories is a tactical decision. Tactical decisions in aid of trial strategy are at the core of a lawyer's exercise of professional judgment. Only rarely will a court second-guess those choices and find that they constituted ineffective assistance of counsel. *Strickland, supra*, at 689, 104 S.Ct. at 2065. A lawyer is not required by the Sixth Amendment to present a single, coherent defense theory. *Hendricks v. Calderon*, 70 F.3d 1032, 1041 (9th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1335, 134 L.Ed.2d 485 (1996). Counsel for a criminal defendant may, in the exercise of her professional judgment, present inconsistent defense theories without running the risk that such tactics will later be deemed ineffective assistance of counsel. *Brown v. Dixon*, 891 F.2d 490, 495 (4th Cir.1989), *cert. denied*, 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); *see also White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir.1992), *cert. denied*, — U.S. —, 115 S.Ct. 2636, 132 L.Ed.2d 875 (1995) (rejecting claim that trial counsel's decision *not* to present inconsistent defense theories constituted ineffective assistance of counsel); *Jones v. Kemp*, 678 F.2d 929, 931 (11th Cir.1982) (same), *cert. denied*, 459 U.S. 1113, 103 S.Ct. 745, 74 L.Ed.2d 965 (1983); *Fritchie v. McCarthy*, 664 F.2d 208, 214 (9th Cir.1981) (same). Therefore, Jerome's lawyer's decision to attempt to create reasonable doubt through the use of conflicting defense theories cannot be said to have deprived Jerome of effective assistance of counsel.[4]

---

**3.** *See* 21 U.S.C.A. § 848(c) (West 1981) (declaring 1976 Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219, *codified at* 18 U.S.C. § 4201 et seq., *and repealed by* Pub.L. No. 98–473, Title II, §§ 218(a)(5), 235, 98 Stat. 2027, 2031 (1984) inapplicable to sentences imposed for carrying on a continuing criminal enterprise).

**4.** Jerome cites *Bland v. California Dep't of Corrections*, 20 F.3d 1469 (9th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 357, 130 L.Ed.2d 311 (1994) as authority for the proposition that the presentation by defense counsel of conflicting defense theories is *per se* ineffective assistance. That case does not appear to stand for such a broad proposition. There, the court found that the

The court finds some irony, especially in light of Jerome's argument that Carter King's optimistic prediction of acquittal (on which Jerome claims to have relied in deciding to reject the plea offer) was incompetent in the face of overwhelming evidence, in Jerome's assertion that King's use of inconsistent defense theories at trial denied him effective assistance of counsel. Jerome argues that Carter King's behavior at trial cost him a verdict of not guilty. He argues that King displayed inadequate understanding of the elements of the insanity and entrapment defenses, that King adduced testimony of expert witnesses of dubious veracity, that King virtually argued the prosecution's case for them in his effort to prove that Jerome was a small fry rather than the big fish in the CCE case.

If the evidence was so overwhelming that no competent attorney would have neglected to recommend, in the strongest terms, that Jerome accept a plea offer, then it seems correspondingly unlikely that Carter Kings's alleged displays of forensic incompetence had any effect on the verdict. Jerome simply cannot have it both ways. However, for the purposes of the argument that King's trial performance was constitutionally inadequate to the task of defending Jerome, the court will assume that the evidence was *not* so overwhelming that a better advocate could not have affected the trial's outcome, and ignore for the moment that assumption's implications for Jerome's argument that because he never had a chance at acquittal Carter King's failure to exhort Jerome's acceptance of the plea offer constituted ineffective assistance.

It does appear from the record that Carter King failed to appreciate the legal distinction between the argument that intoxication may negate the element of culpable intent required to convict a defendant of a crime and the argument, roundly rejected by American courts, that voluntary intoxication can be used to prove that at the time of the commission of the crime the defendant could not distinguish right from wrong. The court accepts Jerome's argument that the "insanity" defense based on Jerome's use of alcohol and narcotics never stood the ghost of a chance at winning an acquittal.

But the entrapment defense appears from the record to be of considerably more substance. The government did not contend that prior to the "sting" operation in which Jerome was caught red-handed participating in the sale of five kilos of cocaine Jerome had ever orchestrated a drug deal of such magnitude. Carter King made much of Jerome's reputation as a nickel-and-dime drug dealer, selling amounts of cocaine more or less consistent with personal use by his customers, rather than with further distribution by them. King emphasized the process by which the government had manipulated its informers, Joe and Monica Kinney, into pressuring Jerome towards selling much larger amounts of cocaine than was his custom. King adduced evidence of the extent to which the negotiations regarding the five-kilo sale were to a considerable extent initiated by the government.

In sum, the record reveals a colorable, if less than compelling case for entrapment, at least with respect to the five-kilo sale which was Jerome's Gotterdämmerung. The fact that the jury was not convinced in no way requires a finding of ineffective assistance.

The court's analysis of Jerome's Section 2255 petition would be incomplete without at least some discussion of the evidence of his

---

defendant was deprived of effective assistance not because of conflicting *theories,* but because defense counsel's argument directly contradicted the defendant's own testimony. The defendant had denied, both in tape-recorded conversations with a codefendant and in his sworn statement to police, that the codefendant had pulled the fatal trigger. Defense counsel, in cross-examination of the state's witnesses, had suggested that the same codefendant was in fact the shooter. The distinction between that case and the present one is obvious: It is one matter for defense counsel to present *legal* theories such as insanity and entrapment which may only be credited by the jury if they find facts which undermine an alternate defense theory. It is an entirely different matter when defense counsel makes statements of *fact* which blatantly contradict the testimony of her client. The *Bland* court used the word "theory" in the sense of the parties' "theory of the case," i.e. what actually happened. Carter King's defense of Gary Jerome entailed no such factual contradictions.

guilt which the government set before the jury.

The government presented surveillance videotape of Gary Jerome bragging of his fifteen years' experience in narcotics trafficking and of his ability to move a kilogram of cocaine every month. The government presented evidence that prior to the March 1986 five-kilogram "sting" operation Jerome had frequently sold cocaine; the government proved at least 69 prior cocaine sales by Jerome. The government proved Jerome's involvement in a half-kilogram cocaine sale in 1984. The government introduced a tape-recorded confession by Jerome to multiple interstate sales of cocaine. The government introduced testimony by a DEA agent who had personally purchased two ounces of cocaine from Jerome.

█ Even assuming Carter King's performance as defense counsel was disorganized, poorly researched, and generally incompetent, the evidence against Gary Jerome was massive. The court cannot conclude that there exists a reasonable probability that but for King's incompetent representation of Jerome at trial, that the jury would have had reasonable doubt as to Jerome's guilt. *Strickland, supra*, at 694, 104 S.Ct. at 2068. With the videotape and sound recording evidence, with the testimony of federal law enforcement officers to numerous in-person drug transactions with Jerome, with the testimony of the government's informers, with Jerome's own tape-recorded confession, the chance that a jury would have failed to convict him is simply too low to be considered "reasonable."

The court cannot find that Carter King's performance, no matter how deficient, rendered the result of the trial unreliable or the proceeding as a whole "fundamentally unfair." *United States v. Blaylock*, 20 F.3d 1458, 1465–66 (9th Cir.1994) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993)). It is simply impossible to conclude that the overall result was unjust. *See United States v. Appoloney*, 761 F.2d 520, 525 (9th Cir.), *cert. denied*, 474 U.S. 949, 106 S.Ct. 348, 88 L.Ed.2d 296 (1985).

Carter King is no Clarence Darrow. He is no Johnnie Cochran. He may well occupy a position near the nadir of professional legal expertise. Nonetheless, it cannot be said either that King's strategic or tactical choices in his defense of Gary Jerome fell so far outside the permissible range of professional choices that his assistance was constitutionally ineffective, or, indeed, even admitting that his representation was inadequate, that Jerome has established a reasonable probability that a different lawyer would have produced a more favorable result. Jerome's petition to vacate his sentence must therefore be denied.

█ Finally, Jerome claims that Carter King "deprived" him of his right under the Fifth Amendment to testify in his own defense. This claim is utterly without merit. Jerome accepted his lawyer's decision not to call him to testify, and "remained silent," *i.e.* he did not object, in court, to that decision. Jerome argues that he did not "remain silent" in the face of his lawyer's decision not to call him as a witness. Jerome misunderstands the meaning of the decisions cited by the government as authority for the proposition that a defendant who does not speak up, in court, and object to his own lawyer's decision not to call him, has waived his right to testify. The fact that Jerome may have told Carter King he wished to testify is totally irrelevant. *United States v. Nohara*, 3 F.3d 1239, 1243–44 (9th Cir.1993).

█ The court's judgment that Jerome was not deprived of his right to effective assistance of counsel requires the rejection of the parties' proposed agreement (Doc. # 658A) in settlement of Jerome's Section 2255 petition. Congress's purpose in enacting Section 2255 was the provision of a remedy for an unconstitutional, unjust or otherwise erroneous sentence of imprisonment. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *United States v. Lewis*, 392 F.2d 440 (4th Cir.1968). The court having found that Jerome's sentence of imprisonment was not imposed in violation of his constitutional right to assistance of counsel for his defense, it must decline to permit the parties to circumvent a valid sentence

imposed following a valid jury verdict. To hold otherwise would, in the opinion of the court, undermine Congressional intent, and therefore contravene public policy.

*IT IS THEREFORE HEREBY OR-DERED* that Defendant Gary Jerome's petition (Doc. # 639) under 28 U.S.C. § 2255 to vacate his sentence and judgment of conviction is *DENIED.*

*IT IS FURTHER HEREBY ORDERED* that the Clerk shall enter judgment accordingly.